# **<u>EXHIBIT D</u>**

Global Disinformation Index's Petition to Quash Civil Investigative Demand Issued by the US Federal Trade Commission

**CLIFFORD CHANCE US LLP**

2001 K STREET NW
WASHINGTON, DC 20006 - 1001

TEL +1 202 912 5000
FAX +1 202 912 6000

www.cliffordchance.com

**By E-mail and Hand Delivery**

Joseph Ostoyich
Direct Dial: +12029125533
E-mail: joseph.ostoyich@cliffordchance.com

September 17, 2025

April J. Tabor
Secretary
Office of the Secretary
Federal Trade Commission
600 Pennsylvania Ave NW
Washington, DC 20580
atabor@ftc.gov

Re: FTC File No. 251-0061

Dear Madam Secretary

Pursuant to 16 C.F.R. § 2.10 and §4.2, enclosed please find the Global Disinformation Index's Petition to Quash the United States Federal Trade Commission's Civil Investigative Demand dated May 20, 2025, in the above-referenced matter.

Respectfully submitted,

Joseph Ostoyich

Enclosures

cc:     Office of the Secretary, electronicfilings@ftc.gov
        Geoffrey Green , ggreen@ftc.gov
        Justin Epner, jepner@ftc.gov
        Theodore Zang, tzang@ftc.gov

**BEFORE THE UNITED STATES**
**FEDERAL TRADE COMMISSION**

In the Matter of

The Civil Investigative Demand dated
May 20, 2025, and as modified July 18, 2025,
to The Global Disinformation Index

**PUBLIC**

FTC File No. 251-0061

**PETITION TO QUASH CIVIL INVESTIGATIVE DEMAND**

Pursuant to 16 C.F.R. § 2.10(a), Petitioner The Global Disinformation Index ("GDI") hereby respectfully requests that the United States Federal Trade Commission ("FTC" or "Commission") quash the Civil Investigative Demand ("CID") dated May 20, 2025, which was subsequently modified and received on July 18, 2025.[1] The CID should be quashed in its entirety because: (1) GDI is not a target of the Commission's investigation and cannot be—the Commission lacks the authority to bring an enforcement action against nonprofits like GDI, and (2) the targets of the Commission's investigation are—in its own words—"advertisers and/or advertising agencies" who allegedly "agreed to use certain lists promulgated by other industry participants," and relevant documents (to the extent the CID calls for any) can be obtained directly from the advertisers and agencies, rather than burdening non-party GDI with a CID that broadly infringes

---

[1] This petition is timely. GDI conferred with Commission staff within fourteen days of receiving the CID, and among other extensions detailed in Exhibit 1, on August 28, 2025, staff granted an extension of the deadline to file a petition to limit or quash the CID to September 17, 2025. *See* Ex. 1 Statement of Counsel; Ex. 2, Extension Letter from Commission Staff J. Epner.

on its First Amendment and other constitutional rights and is not probative of any advertiser or agency conspiracy.

## BACKGROUND AND PROCEDURAL HISTORY

GDI was an independent, nonprofit organization registered in both the United Kingdom and the United States.[2]  GDI was a strictly non-partisan journalistic entity that did not advocate for or against any political ideology or party.[3]  It was organized as a 501(c)(3) nonprofit dedicated exclusively to charitable and educational purposes, with a mission to promote a trustworthy information ecosystem through objective, data-driven analysis.[4]  GDI's work was global in scope and was guided by its charitable purpose of educating the public about the risk of disinformation in online news.[5]

GDI was not an advertiser or advertising agency and did not purchase or sell advertising. GDI did not enter into agreements with any advertiser (or advertising agency) that required them to spend (or not spend) their dollars in any particular way or to do business (or not do business) with any particular website or other publisher.  Instead, GDI simply provided information to its subscribers and clients who were free to do whatever they wanted with it via their own independent decision-making.

GDI conducted independent risk assessments based on neutral and transparent data by evaluating news sites based on criteria, such as adherence to journalistic standards, transparency

---

[2] Ex. 3, *See* Certificate of Incorporation of Disinformation Index, Inc., August 10, 2020 (produced as GDI000001-GDI000005).
[3] *See About Global Disinformation Index*, GLOBAL DISINFORMATION INDEX,
https://www.disinformationindex.org/about (last visited August 29, 2025).
[4] *Id.*
[5] *Id.*

The Global Disinformation Index Petition to Quash
Page 2 of 15

of ownership and funding, editorial independence, and the use of fact-based reporting.[6]  The results of these assessments were shared through research reports and disinformation resources, such as the Dynamic Exclusion List ("DEL"), which each of GDI's subscribers was free to use to inform its independent brand safety decisions or to disregard on a case-by-case basis, as it saw fit.[7]  GDI's services also included media market reviews, publisher vetting, open-source intelligence analysis, and policy support.[8]  These offerings were intended to help each of its subscribers to exercise its own judgment to identify reliable information and distinguish it from disinformation without dictating or influencing advertising placements.[9]  GDI's assessments were journalistic reports and each subscriber and client was free to use or not use the information GDI provided as it saw fit in its own independent determination.

On May 20, 2025, GDI received a CID that contained 29 document requests broadly calling for GDI to produce records relating to all aspects of its operations for more than seven years, dating back to its founding.[10]  The CID did not put GDI on notice of the nature of the Commission's investigation: it literally lacked any explanation of the subject of the investigation, despite Section 57b-1(c)(2) of the FTC Act demanding that "[e]ach civil investigative demand shall state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." 15 U.S.C. § 57b-1(c)(2).  And, not one of the requests appeared aimed at what the Commission subsequently claimed it was investigating: "whether online advertisers and/or advertising agencies have unlawfully agreed to use certain lists promulgated by

---

[6] *See What We Do*, GLOBAL DISINFORMATION INDEX, https://www.disinformationindex.org/product (last visited August 29, 2025).
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] Ex. 4, Civil Investigative Demand Issued to the Global Disinformation Index by the U.S. Federal Trade Commission.

other industry participants that categorize or rate content publishers as not 'brand suitable' or not 'brand safe,' to coordinate the placement of ads."  *In re Civil Investigative Demand to Media Matters for America*, Order Denying Petition to Quash Civil Investigative Demand, FTC File No. 251-0061 at 2 (July 25, 2025).

On June 10, 2025, GDI produced information responsive to Specifications 1, 2, and 3, namely the Certificate of Incorporation of Disinformation Index, Inc., establishing GDI's status as a registered nonprofit under 26 U.S.C. § 501(c)(3), without waiving any of its objections, rights or privileges.[11]  During the meet and confer process, GDI objected to the CID on July 14, 2025, stating that the Commission lacks the authority and jurisdiction to enforce the CID because it does not state the nature of the investigation and provision of law under investigation, improperly seeks documents and information from a nonprofit where the Commission lacks jurisdiction and violates GDI's First Amendment rights. GDI also pointed out that the CID is overbroad, vague, and includes undefined terms.[12]

On July 18, 2025, the Commission modified its CID to add a description of its investigation claiming that it was looking into whether "any natural persons, partnerships, corporations, associations, or other legal entities have engaged in or are engaging in unfair, anticompetitive, collusive, or exclusionary acts or practices – including inviting, participating in, or facilitating boycotts or other collusion or coordination – to withhold, degrade, increase the cost of, or otherwise diminish the quantity of advertising placed on news outlets, media platforms, or other publishers."[13]  The modified CID was otherwise exactly the same, *i.e.*, its 29 requests for

---

[11] *See* Ex. 3, Certificate of Incorporation of Disinformation Index, Inc., August 10, 2020 (produced as GDI000001-GDI000005).
[12] *See* Ex. 1, Statement of Counsel.
[13] Ex. 4, Civil Investigative Demand Issued to the Global Disinformation Index by the U.S. Federal Trade Commission.

The Global Disinformation Index Petition to Quash
Page 4 of 15

documents going back more than seven years to January 2018 continued to broadly call for GDI to produce records relating to all aspects of its operations throughout its existence.  Not one of the requests calls for any information about agreements between and among advertisers or advertising agencies.[14]

GDI conferred with Commission staff on June 4, June 5, June 6, June 10-11, June 16, July 9, July 11, July 14, July 18, July 23, August 4, August 26, August 28, September 12, and September 15 to discuss the scope, burden, and unconstitutionality of the CID, and to raise all of the issues addressed in this petition as required by 16 C.F.R. § 2.10(a)(2).  To date, the Commission has refused to retract its CID (despite conceding that the Commission does not have authority to enforce against nonprofits) and has declined to amend the requests that infringe on GDI's First Amendment rights.

Media Matters for America ("Media Matters"), a nonprofit entity that similarly engages in journalistic conduct (*i.e.*, gathering information from public sources, evaluating it for truthfulness and other qualities, and publishing reports containing the findings of their assessments) received a similar CID from the Commission on May 20, 2025.  Like GDI, Media Matters' work is focused on informing the public and promoting accountability through media monitoring and research. Media Matters filed a petition to quash the CID that was denied by the Commission on July 25, 2025.  Media Matters was granted a preliminary injunction by the DC District Court on August 15, 2025.  *See Media Matters for Am. v. FTC*, No. CV 25-1959 (SLS), 2025 WL 2378009 (D.D.C. Aug. 15, 2025).

---

[14] Specification 9 calls for GDI's communications with its customers/subscribers, which is different from an agreement between and among advertisers or advertising agencies. Regardless of whether Specification 9 calls for information relevant to an advertiser (or advertising agency) agreement, the CID against GDI should be quashed. *See infra* Section II.

The Global Disinformation Index Petition to Quash
Page 5 of 15

## ARGUMENT

The Commission's CID should be quashed for two independent reasons.  First, the CID should be quashed because GDI is not and cannot be a target of the investigation, either as a conspirator, facilitator, or inviter of the alleged conspiracy, because it is a nonprofit organization outside the jurisdiction of the Commission.  As the Commission staff admitted during the September 12 meet and confer, the FTC Act does not authorize the Commission to enforce antitrust laws against nonprofit organizations like GDI.  *See* 15 U.S.C. §§ 44-45; *see also United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) (explaining that an agency's investigative powers are limited to matters within its jurisdiction).

Second, the CID should be quashed because the CID calls for information that infringes on GDI's First Amendment rights.  The unconstitutional nature of this CID has already been determined in federal court.  *See Media Matters*, 2025 WL 2378009, at *1-4 (granting Media Matters' request for preliminary injunctive relief from their CID as it "present[ed] a straightforward First Amendment violation").  The CID requests information about how GDI gathers information for its reports.  No specification in the CID calls for any information regarding agreements between or among advertisers or advertising agencies.  To the extent Specification 9 calls for GDI's vertical arrangements with each subscriber, any response by GDI would be constitutionally protected by the First Amendment as it was all newsgathering information intended to be disseminated to GDI's subscribers who were each free to use GDI's information as they saw fit.  Gathering the information requested in the CID is unduly burdensome to GDI because the only limited information that is relevant to an advertiser or advertising agency agreement can be better obtained from those entities without infringing on GDI's protected rights or burdening it with complying with the CID.

The Global Disinformation Index Petition to Quash
Page 6 of 15

An "investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power." *Morton Salt Co.*, 338 U.S. at 652. Although the Commission may exercise its agency discretion to determine the scope of its own investigative authority, its "[s]ubpoena enforcement power is not limitless." *FTC v. Ken Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001). The enforcement of a CID requires that the CID is reasonable in the "nature, purposes, and scope of the inquiry." *Okla. Press Pub. Co. v. Walling, 327* U.S. 186, 209 (1946). Thus, a CID is only enforceable if "the demand is not too indefinite, and the information sought is reasonably relevant." *Morton Salt Co.*, 338 U.S. at 652. The CID must not be "unduly burdensome  or unreasonably broad," so that "compliance threatens to unduly disrupt or seriously hinder normal operations of business." *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977).

For these reasons and those stated below, each of these issues is an independent basis for granting this petition, therefore the Commission should quash the CID in its entirety.

**I.     The CID should be quashed because GDI is a nonprofit that is not, and cannot be, a target of the Commission's investigation.**

GDI cannot be a target of the Commission's investigation because, as a nonprofit, it is outside the Commission's jurisdiction. The FTC Act limits the Commission's enforcement jurisdiction to entities "organized to carry on business for [their] own profit or that of [their] members." 15 U.S.C. §§ 44–45; *Nat'l Federation of the Blind v. FTC,* 420 F.3d 331, 334 (4th Cir. 2005) (holding that nonprofits "fall outside the scope of the agency's jurisdiction"). The Commission admitted as much during the September 12 meet and confer. The Commission's power to issue a CID is contingent on its authority to enforce the underlying law against the target

of the investigation; the Commission's lack of jurisdiction to enforce antitrust laws against GDI necessarily limits its ability to issue a CID for which it is a target.  *Id*.

GDI produced information certifying its status as a nonprofit organization to the Commission on June 10, 2025, as GDI000001 to GDI000005.  *See* Exhibit 3.  Because GDI is a nonprofit organization and the Commission does not have the authority to enforce the antitrust laws against GDI, the CID must be quashed.

## II.    The CID should be quashed because it broadly violates non-party GDI's First Amendment rights.

The CID must be quashed because it "presents a straightforward First Amendment violation."  *Media Matters for Am.*, 2025 WL 2378009, at *1-4 (finding that the First Amendment protection applies to a related CID issued by the Commission).  The First Amendment protects journalists from being forced to reveal information gathered in the course of their news reporting. *See Hutira v. Islamic Republic of Iran*, 211 F. Supp.2d 115, 118 (D.D.C. July 9, 2002) ("[T]he First Amendment provides journalists with a qualified privilege against compelled disclosure of information obtained through their news gathering activities").  This protection is a vital safeguard provided under the First Amendment.  *See, e.g.*, *Zerilli v. Smith*, 656 F.2d 705, 710 (D.C. Cir. 1981) ("The First Amendment guarantees a free press primarily because of the important role it can play as a vital source of public information.") (internal citation omitted); *Shoen v. Shoen*, 48 F.3d 412, 415-16 (9th Cir. 1995) (finding that compelled "disclosure of research materials poses a serious threat to the vitality of the newsgathering process").  If journalists feared their ability to gather information, "citizens would be far less able to make informed political, social, and economic choices" because the quantity of truthful sources would inevitably decline. *Zerilli*, 656 F.2d at 711.

This protection may only be infringed in limited circumstances as "the press' function as a vital source of information is weakened whenever the ability of journalists to gather news is impaired." *Zerilli*, 656 F.2d at 711-12 ("[I]f the privilege does not prevail in all but the most exceptional cases, its value will be substantially diminished."). Courts have found that journalists may be forced to disclose newsgathering information if "the private interest in compelling disclosure" outweighs "the public interest in protecting the reporter's sources." *Hutira*, 211 F. Supp. 2d at 118-19 (quoting *Zerilli*, 656 F.2d at 712); *see also Shoen v. Shoen*, 48 F.3d 412, 415 (9th Cir. 1995) ("the process of deciding whether the privilege is overcome requires that 'the claimed First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts, and a balance struck to determine where lies the paramount interest.'") (quoting *Shoen v. Shoen*, 5 F.3d, 1289, 1292-93 (9th Cir. 1993) and *Farr v. Pitchess*, 522 F.2d 464, 468 (9th Cir. 1975)).

A journalist may invoke this protection when they had "the intent to use material – sought, gathered or received – to disseminate information to the public and that such intent existed at the inception of the newsgathering process." *Von Bulow v. Von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987); *see also Shoen*, 5 F.3d at 1293-94. The privilege is protected "regardless of the medium used to report the news to the public." *Shoen*, 5 F.3d at 1293. The purpose of the journalist privilege is to protect "investigative reporting." *Id.* (emphasizing that the purpose of the journalistic privilege "was not solely to protect newspaper or television reporters, but to protect the activity of 'investigative reporting' more generally.") (quoting *Von Bulow*, 811 F.2d at 142-43).

GDI's research reports and disinformation resources "on public issues are quintessential First Amendment activities" that afford GDI journalistic privilege. *Media Matters for Am. v. Paxton*, 138 F.4th 563, 584 (D.C. Cir. 2025); *see also Snyder v. Phelps*, 562 U.S. 443, 452 (2011)

("[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection."); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) ("The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions."); *Roth v. United States*, 354 U.S. 476, 484 (1957) ("The protection given speech and press was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.").

GDI's work focused on three primary areas that all disseminated information to the public. First, GDI offered a neutral, independent, transparent index of a website's risk of disinforming readers—the DEL—to inform advertisers, the ad tech industry, search and social media companies, and researchers of the possibility of being adjacent to disinformation.[15]  Second, GDI hosted an independent, nonprofit open-source intelligence hub, which tracked disinformation and extremism across platforms to inform a broad array of non-governmental organizations, ad tech intermediaries, and online platforms.[16]  Third, GDI published data and research reports to policy makers in governments, regulatory bodies, platforms around the world, and to the general public, per its mission.[17]

Gathering the information requested in the CID and being forced to disclose it to the Commission violates GDI's First Amendment Rights.  GDI produced documents responsive to Specifications 1, 2, and 3, which relate to GDI's incorporation and government records demonstrating its nonprofit status.  But forcing GDI to comply with the remainder of the CID would compel disclosure of its sources, methods, and internal research—core elements protected

---

[15] *See What We Do*, GLOBAL DISINFORMATION INDEX, https://www.disinformationindex.org/product (last visited August 29, 2025).
[16] *Id.*
[17] *Id.*

by the First Amendment—that GDI used in its DEL, open-source intelligence hub, and research reports.  Similar specifications in the Media Matters CID, which bears the same FTC matter number as GDI's CID (FTC File No. 251-0061), have already been found to unconstitutionally seek a reporter's resource materials.  *Media Matters for Am.*, 2025 WL 2378009, at *16 (recognizing that "[a] reporter of ordinary firmness would be wary of speaking again if she had to reveal the materials requested by this fishing expedition of a CID").

For example, Specifications 1, 2, 3, 4, 7, 8, 10, 13, 14, 22, 23, 25 and 29 are practically identical to the Media Matters CID, which was found to cause the disclosure of the newsgathering entity's sources, methods, and internal research.  *See, e.g.*, *id.* at *16 ("Provide all communications between Media Matters and any other person regarding any request for Media Matters to label any news, media, sources, outlets, platforms, websites, or other content publisher entities for 'brand suitability,' 'reliability,' 'misinformation,' 'hate speech,' 'false' or 'deceptive' content, or similar categories, regardless of whether the request was fulfilled."); *id.* at *16 ("Provide documents sufficient to show the methodology by which Media Matters evaluates or categorizes any news, media, sources, platforms, outlets, websites, or other content publisher entities."); *id.* at *16 ("Provide all documents, including correspondence, relating to Media Matters working with ad tech, technology, or developer companies or social media platforms to develop or advance any of [Media Matters'] programs, policies, or objectives, including but not limited to any agreements between Media Matters and these companies."); *id.* at *16 ("Provide all analyses or studies that Media Matters conducted, sponsored, or commissioned relating to advertising on social media or digital advertising platforms, including but not limited to any financial analyses or studies, and all data sets and code that would be necessary to replicate the analysis.").

Further, the CID is an aimless fishing expedition into the most sensitive areas of GDI's journalism and advocacy that causes undue burden on GDI. *See id.* at *15 (finding that "the FTC issued a sweeping and burdensome CID calling for sensitive materials"). Critically, the purported subject of the investigation does not align with the specifications in the CID. *See generally Livingston v. Copart of Conn., Inc.,* 2020 U.S. Dist. LEXIS 248008, 2020 WL 8167497, (D.S.C. May 21, 2020) at *4 ("[A] subpoena that seeks information irrelevant to the case is a per se undue burden."). The purported subject of the investigation is whether there is an advertiser boycott for "news outlets, media platforms, or other publishers."[18] *See Media Matters for Am.*, 2025 WL 2378009, at *1 (explaining that the Commission also "issued a sweeping CID to Media Matters, purportedly to investigate an advertiser boycott concerning social media platforms"). There is no specification in the CID that requests information relevant to uncovering the existence of any agreements between or among advertisers or advertising agencies.

Only one of the 29 specifications in the CID (Specification 9) requests documents arguably related to the alleged advertising cartel the Commission is purportedly investigating: communications between GDI and advertisers or advertising agencies. But tellingly, during the meet and confer process, the Commission staff did not highlight this specification as a priority. Regardless, any information provided by GDI in response to Specification 9 would infringe upon GDI's First Amendment rights—reinforcing that the true purpose of the Commission's investigation is not to root out an advertiser cartel or advertising agency cartel but to punish GDI's exercise of free speech.

---

[18] Ex. 4, Ex. 4, Civil Investigative Demand Issued to the Global Disinformation Index by the U.S. Federal Trade Commission.

Instead of aiding the investigation, Specification 9 only places an unconstitutional burden on GDI as the Commission can get any relevant information directly from any advertiser or agent they allege may be participating in an advertiser boycott.  This is illustrated by the Commission's own statement in their denial of Media Matters' motion to quash, in which the Commission states that they are investigating whether advertisers or advertising agencies agreed to use certain lists to boycott placing advertisements.  *See In re Civil Investigative Demand to Media Matters for America*, Order Denying Petition to Quash Civil Investigative Demand, FTC File No. 251-0061 at 2 (July 25, 2025).  Therefore, placing the burden of producing these documents on GDI is superfluous and unnecessarily burdensome to GDI.

During the meet and confer process, when pressed on which specifications of the 29 actually related to the Commission's priorities, staff was only able to come up with two—Specifications 10 and 22. Both of these specifications go to the core of GDI's First Amendment rights, however, and the Commission staff refused to modify these specifications to not invoke GDI's First Amendment rights.

GDI was a fact-gathering organization that compiled and shared transparent data to help its subscribers make informed economic decisions.  It did not buy, sell, or broker advertisements, nor did it contract with advertisers or advertising agencies with any requirement that they buy or not buy advertisements on any particular website.  GDI's subscribers remained free to use or not use the information provided by GDI in whatever manner they please.  GDI's subscribers were under no obligation to adhere to the information provided by GDI.

There is no legitimate, constitutional justification for the Commission's invasive demands. Forcing compliance would not only violate GDI's First Amendment rights by compelling disclosure of protected sources, methods, and internal research, but would also undermine the

constitutional protections afforded to fact-gathering institutions. Any limited information that might be relevant to an advertiser or advertising agency agreement to use certain lists—which would still invade GDI's First Amendment rights—is better sought directly from an advertiser or advertising agency to avoid infringing on GDI's constitutionally protected rights and causing undue burden. The CID should be quashed.

## RESERVATION OF RIGHTS

By submitting this Petition to Quash, GDI does not intend to—and does not—waive any rights to make additional arguments against the Commission's investigation of GDI, the CID, or both, including under the First Amendment of the U.S. Constitution, the FTC Act, or any other clause of the U.S. Constitution or any statute or rule.

## CONCLUSION

The Commission either does not have the authority to bring an enforcement action against GDI, or forced compliance with the CID would infringe on GDI's First Amendment rights and cause undue burden. As a result, the CID should be quashed in its entirety.

DATED September 17, 2025                  Respectfully Submitted,

                                         CLIFFORD CHANCE US LLP

                                         By:     /s/ Joseph Ostoyich

                                                 Joseph Ostoyich
                                                 William Lavery
                                                 Danielle Morello
                                                 Dorothea Allocca
                                                 Kaia Pankey
                                                 Ross Jablon
                                                 Clifford Chance US LLP
                                                 2001 K St NW
                                                 Washington, DC 20006
                                                 Tel: (202) 912-5533

                                                 *Counsel for The Global Disinformation Index*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 17, 2025, the foregoing Petition to Quash the Civil

Investigative Demand was served by electronic mail to the following:

Office of the Secretary
600 Pennsylvania Ave. NW
Washington D.C. 20580
electronicfilings@ftc.gov

April Tabor, Secretary of the Commission
600 Pennsylvania Ave. NW
Washington D.C. 20580
atabor@ftc.gov

Geoffrey Green
600 Pennsylvania Ave. NW
Washington D.C. 20580
ggreen@ftc.gov

Justin Epner
600 Pennsylvania Ave. NW
Washington D.C. 20580
jepner@ftc.gov

Theodore Zang
600 Pennsylvania Ave. NW
Washington D.C. 20580
tzang@ftc.gov

DATED: September 17, 2025                    */s/ Joseph Ostoyich*_____

Joseph Ostoyich
Clifford Chance US LLP
2001 K St NW
Washington, DC 20006
Tel: (202) 912-5533

*Counsel for The Global Disinformation Index*

# <u>EXHIBIT 1</u>

Statement of Counsel Pursuant to 16 C.F.R. § 2.10(a)(2)

**BEFORE THE UNITED STATES
FEDERAL TRADE COMMISSION**

| | |
|---|---|
| In the Matter of<br><br>The Civil Investigative Demand dated May 20, 2025, and as modified July 18, 2025, to The Global Disinformation Index | **PUBLIC**<br><br>FTC File No. 251-0061 |

**STATEMENT OF COUNSEL PURSUANT TO 16 C.F.R. §2.10(a)(2)**

Counsel for petitioner, Clifford Chance US LLP ("Clifford Chance") respectfully submits this Statement of Counsel pursuant to 16 C.F.R. § 2.10(a)(2) in support of the Petition to Quash the Civil Investigative Demand ("CID") filed by the Global Disinformation Index on September 17, 2025. Clifford Chance has conferred with Commission staff pursuant to § 2.7(k) in an effort in good faith to resolve by agreement the issues raised by the CID and has been unable to reach such an agreement.

On Wednesday, June 4, 2025, Levy Firestone emailed Commission staff and requested a phone call. Commission staff agreed to schedule a meeting on Friday, June 6, 2025. On Friday, June 6, 2025, Levy Firestone met with staff via videoconference to discuss the CID. During the call, Levy Firestone and staff discussed an extension of the petition to limit or quash the deadline relating to the CID. Staff granted that extension later the same day, setting a new deadline to file a petition to limit or quash deadline the CID of June 20, 2025.

On Tuesday, June 10, 2025, Levy Firestone, without waiving any objections, rights or privileges of the GDI, produced an initial set of documents and information responsive to

Exhibit 1 to the Global Disinformation Index Petition to Quash
Page 1 of 6

Specifications 1-3 of the CID at Bates Nos. GDI000001- GDI000005, the articles of incorporation for Disinformation Index, Inc in Delaware.  Levy Firestone also stated in its correspondence that GDI is a nonprofit, GDI's work is performed for a charitable purpose, and GDI does not have physical offices.  In the same email, Levy Firestone requested an extension of the date of compliance with the CID.  Additionally, Levy Firestone requested a brief extension from June 20, 2025, to June 27, 2025, to file a petition to limit or quash the CID.

On Wednesday, June 11, 2025, staff confirmed receipt and acknowledged Levy Firestone's request for extension and flagged as a preliminary matter that staff may request more information regarding Specification 3.  On Monday, June 16, 2025, in light of GDI's ongoing cooperation, staff extended the return date and the petition to limit or quash deadline relating to the CID to July 21, 2025.  The FTC's extension exceeded the requested seven-day extension by almost a month.

On Monday, July 14, 2025, Levy Firestone and FTC staff met again via videoconference. During the meeting, Levy Firestone raised big picture and specific objections to the CID.

Levy Firestone informed staff that the Commission lacked the authority and jurisdiction to enforce the CID issued to GDI because the CID does not state the nature of the investigation and provision of law under investigation, improperly seeks documents and information from a nonprofit where the Commission lacks jurisdiction, and would violate GDI's First Amendment rights.  Levy Firestone also pointed out that the CID is overbroad, vague and includes undefined terms and made it clear that until the Commission can show that it has followed its statute, has jurisdiction to investigate GDI, and is not violating GDI's First Amendment rights, it is premature to negotiate the overbreadth and ambiguity of the Specifications.

During the meeting, Levy Firestone told staff that they were available to discuss any of their issues with the CID, but staff were not willing to substantively address their points about the CID's legal infirmities.  Levy Firestone also told staff that if the Commission were to issue a modified CID, Levy Firestone would need time to evaluate it and assess with GDI whether to respond to it or to petition to quash or modify it.

During the meeting on Monday, July 14, 2025, Levy Firestone also offered, in the alternative, that the Commission could stay GDI's obligations to respond to the CID, pending judicial review of the complaint Media Matters filed in federal court against the Commission regarding a similar CID issued to Media Matters.  In response, staff noted that Media Matters had not sought a temporary restraining order or a preliminary injunction.

On Friday, July 18, 2025, Levy Firestone emailed staff noting that since the meeting on Monday, July 14, 2025, Media Matters had sought a preliminary injunction, and the court had issued a briefing schedule and would hold oral arguments on August 13, 2025.  Levy Firestone also noted that it therefore appeared likely that within a few weeks of GDI's current July 21 deadline to respond to the CID, there would be a determination from the court as to whether the CID issued to Media Matters would be restrained or enjoined.  In light of the foregoing, Levy Firestone inquired whether the Commission would be withdrawing the CID, issuing a modified CID, staying GDI's obligations to respond to petition to quash or modify the subpoena pending resolution of the Media Matters litigation, or seeking, through staff, another conversation.  Levy Firestone also stated that, otherwise, they would petition to quash on July 21, 2025.

On the same day, staff issued a letter modifying the May 20, 2025, CID to provide the following clarification:

## *SUBJECT OF THE INVESTIGATION*

*To determine whether any natural persons, partnerships, corporations, associations, or other legal entities have engaged in or are engaging in unfair, anticompetitive, collusive, or exclusionary acts or practices -- including inviting, participating in, or facilitating boycotts or other collusion or coordination -- to withhold, degrade, increase the cost of, or otherwise diminish the quantity of advertising placed on news outlets, media platforms, or other publishers in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, or Section 5 of the FTC Act, 15 U.S.C. § 45, as amended, or any other statutes or rules enforced by the Commission, and to determine the appropriate action or remedy.  See also the attached resolution.*

In an email sent on the same day, Friday July 18, 2025, staff stated that they did not agree with Levy Firestone's characterization of the CID issued to GDI or the assertions regarding the Commission's authority and jurisdiction to enforce the CID.  Staff raised that GDI did not comply with Commission Rule 2.7(k), which required GDI "within 14 days after receipt of process or before the deadline for filing a petition to quash, whichever is first, to discuss compliance and to address and attempt to resolve *all issues*" with Commission staff.  16 C.F.R. § 2.7(k) (emphasis added).  Staff stated that GDI's general objections came well after the 14 days required under the rule.  Staff continued, that nevertheless, to maintain a productive dialogue and address some of the timing concerns raised in Levy Firestone's email, they attached a modified CID and a letter extending GDI's petition to quash and compliance deadlines to August 20, 2025.

Levy Firestone and Commission staff scheduled a meet and confer via videoconference for August 5, 2025.  On August 4, 2025, Levy Firestone emailed staff to inform them that GDI was transitioning to new counsel, but had not yet retained them and that therefore, the meet and confer would not take place as planned.  GDI requested a 30-day extension from the August 20, 2025, deadline to give them time to retain new counsel.  On the same day, staff extended the return date of the CID and the petition to limit or quash deadline relating to the CID to September 3, 2025.

Thereafter, Clifford Chance was retained as counsel by GDI, replacing Levy Firestone.  On August 26, 2025, Clifford Chance called staff to introduce the firm as GDI's new counsel.  On August 27, 2025, Clifford Chance called the staff to discuss the status of the CID and requested an additional two-week extension to return the CID and the petition to limit or quash deadline relating to the CID.  On August 28, 2025, staff extended both the return date for the CID and the deadline to file a petition to limit or quash deadline relating to the CID to September 17, 2025.

Clifford Chance and staff met and conferred via videoconference on September 12, 2025.  During that meeting, Clifford Chance reiterated GDI's specific concerns regarding the CID raised by previous counsel, including that the CID improperly seeks documents and information from a nonprofit where the Commission lacks jurisdiction, and seeks information protected by GDI's First Amendment rights.  Clifford Chance raised the burden of the CID, emphasizing that the requests go to the core of GDI's First Amendment rights and are not relevant to an investigation of an advertising boycott.  Clifford Chance raised that this information could be better sought from the advertisers  Clifford Chance asked whether there is any information GDI could provide that would speak to the conspiracy that it is investigating that doesn't force GDI to produce information that is First Amendment privileged.  Commission staff responded that the investigation centers around commercial relationships, specifically how GDI's exclusion lists are used by ad tech companies in programmatic advertising.  Staff further explained that their highest priority is understanding the commercial aspect of GDI's services and the potential antitrust implications of exclusion list adoption by ad tech companies.  Staff conceded that the Commission does not have jurisdiction over nonprofits, and stated that this is a broad investigation.  When asked which of the Specifications request information responsive to the Commission's stated priority, staff pointed to

Specifications 10 and 22.  Clifford Chance told staff that it would bring these priorities back to the client to explore whether any of the information called for in these Specifications would not implicate GDI's First Amendment Rights.

Clifford Chance and staff met and conferred via videoconference again on Monday, September 15, 2025.  During that meeting, Clifford Chance stated that GDI's position that Specifications 10 and 22 directly implicate the client's First Amendment concerns by targeting information gathered through its reporting and news gathering and asked whether the FTC would propose any modifications to narrow the requests to avoid implicating the First Amendment. Clifford Chance also raised that, at a high level, the requests are extremely broad.  Staff reiterated that the FTC is seeking documents concerning the commercial relationships between GDI and its customers, which staff does not believe would implicate the First Amendment.  When Clifford Chance requested that the CID be modified for Specifications 10 and 22 to avoid raising First Amendment issues, staff declined and repeated generally that the Commission would entertain proposed modifications submitted in writing.

DATED September 17, 2025                    Respectfully submitted,


By:     /s/ Joseph Ostoyich

        Joseph Ostoyich
        Clifford Chance US LLP
        2001 K St NW
        Washington, DC 20006
        Tel: (202) 912-5533

# <u>EXHIBIT 2</u>

Civil Investigative Demand Extension Letter Issued to The Global Disinformation Index by the US Federal Trade Commission



UNITED STATES OF AMERICA
### Federal Trade Commission
WASHINGTON, D.C. 20580

Justin Epner
Attorney
(202) 326-2942
jepner@ftc.gov

August 28, 2025

**VIA EMAIL**

The Global Disinformation Index
c/o Joseph Ostoyich, Esq.
Clifford Chance US LLP
2001 K Street NW
Washington, DC 20006
joseph.ostoyich@cliffordchance.com

> **Re:    FTC File No. 251-0061**

Dear Mr. Ostoyich:

In connection with the May 20, 2025 Civil Investigative Demand issued by the Commission to The Global Disinformation Index ("GDI") ("the CID"), you have requested an extension of the return date and deadline to petition to quash.

Pursuant to FTC Rule 2.7(*l*), this letter extends the return date of the CID to September 17, 2025. Pursuant to Federal Trade Commission Rule 2.10(a)(5), this letter extends the petition to limit or quash deadline relating to the CID to September 17, 2025.

Sincerely,

*/s/ Justin Epner*
Justin Epner
Attorney, Bureau of Competition

APPROVED:

*/s/ Geoffrey Green*
Geoffrey Green
Assistant Director
Anticompetitive Practices I Division
Bureau of Competition

# **<u>EXHIBIT 3</u>**

Certificate of Incorporation of Disinformation Index



# Delaware

Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "DISINFORMATION INDEX, INC", FILED IN THIS OFFICE ON THE TENTH DAY OF AUGUST, A.D. 2020, AT 2:26 O`CLOCK P.M.

Jeffrey W. Bullock, Secretary of State

3410827  8100
SR# 20206662197

Authentication: 203445245
Date: 08-11-20

You may verify this certificate online at corp.delaware.gov/authver.shtml

CONFIDENTIAL - FOR THE FTC ONLY

GDI000001

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:26 PM 08/10/2020
FILED 02:26 PM 08/10/2020
SR 20206662197 - File Number 3410827

## CERTIFICATE OF INCORPORATION

## OF

## DISINFORMATION INDEX, INC.

The undersigned incorporator, a natural person of the age of twenty-one years or more, in order to form a nonprofit nonstock corporation for the purposes stated in this Certificate, in accordance with the provisions of the General Corporation Law of the State of Delaware, hereby certifies that:

### ARTICLE I
### NAME

The name of the Corporation is Disinformation Index, Inc. (hereinafter the "Corporation").

### ARTICLE II
### REGISTERED OFFICE AND AGENT

A.     The address of the Corporation's registered office in the State of Delaware is Corporation Trust Center, 1209 Orange Street, Wilmington, New Castle County, Delaware 19801.

B.     The name of the Corporation's registered agent at such address is The Corporation Trust Company.

### ARTICLE III
### PURPOSES

A.     The Corporation is a nonprofit organization incorporated and operated exclusively for religious, charitable and educational purposes within the meaning of section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"). Such purposes include, without limitation: (i) making available to the public ratings of websites and media sources assessing their disinformation risk using the Corporation's objective published criteria on a nonpartisan basis, (ii) providing educational tools and materials through a website, conferences and seminars, forums and discussions groups to increase understanding among the public regarding disinformation on the internet and in the media, (iii) facilitating access to technology research tools for educational purposes regarding disinformation on the internet and in the media and (iv) providing forums and lectures for the public and industry to increase awareness and educate the public on issues concerning disinformation on the internet and in the media.

B.     In furtherance of the foregoing purposes, the Corporation has all powers and authority granted to it under the General Corporation Law of Delaware and the power to do all things necessary, proper and consistent with maintaining tax-exempt

CONFIDENTIAL - FOR THE FTC ONLY

status under section 501(c)(3) of the Code and its qualification to receive contributions deductible under section 170(c)(2) of the Code.

C.    No part of the net earnings of the Corporation shall ever inure to the benefit of or be distributable to any director, officer or other private persons, except that the Corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article III above.    No substantial part of the activities of the Corporation may be devoted to carrying on of propaganda or otherwise attempting to influence legislation. The Corporation shall not participate in or intervene in (including the publishing or distributing of statements) any political campaign on behalf of or in opposition to any candidate for public office.

D.    Notwithstanding any other provisions of this Certificate, the Corporation shall not carry on any activity not permitted to be carried on by: (1) a corporation described in section 501(c)(3) of the Code, or (2) a corporation contributions to which are deductible under section 170(c)(2) of the Code.

### ARTICLE IV
### NO STOCK

The Corporation is not organized for profit and does not have authority to issue capital stock.

### ARTICLE V
### MEMBERS

The Corporation shall have one class of members (the "Members").    The Members shall be identified in the manner provided in the bylaws of the Corporation (as the same may be amended and/or restated from time to time, the "Bylaws").

### ARTICLE VI
### DIRECTORS

A.    The business and affairs of the Corporation shall be managed by or under the direction of its governing body, which shall be known as the "Board of Directors."

B.    The qualifications, manner of election, number, tenure, powers and duties of the directors shall be as set out in the Bylaws.

### ARTICLE VII
### INCORPORATOR

The name and address of the Incorporator is:

2

GDI000003

| Name | Address |
|------|---------|
| Neil C. Weare | c/o Loeb & Loeb LLP<br>901 New York Avenue NW, Suite 300 East<br>Washington, DC  20001 |

The powers of the Incorporator cease upon the appointment of the initial Board of Directors of the Corporation.

## ARTICLE VIII
## DIRECTOR LIABILITY

A.    No director of the Corporation is personally liable to the Corporation for monetary damages for breach of fiduciary duty as a director except that this Article VIII does not eliminate or limit the liability of a director for:

(1)    any breach of a director's duty of loyalty to the Corporation;

(2)    acts or omissions not in good faith or that involve intentional misconduct or a knowing violation of law; or

(3)    any transaction from which the director involved derived an improper personal benefit.

B.    The private property, both real and personal, of the members of the Corporation, and of the Directors or officers of the Corporation, shall not be subject to the payment of corporate debts to any extent whatsoever.

C.    If the General Corporation Law of Delaware is amended to authorize further limitation on the liability of directors, then the liability of a director of the Corporation, in addition to the limitation of personal liability set out in this Article VIII, will be limited to the fullest extent permitted by the amended law.

## ARTICLE IX
## PRIVATE FOUNDATION RULES

Notwithstanding any other provision of this Certificate of Incorporation, during any time that the Corporation is classified as a private foundation within the meaning of Code Section 509(a), the Corporation:

(1)    shall not engage in any act of self-dealing as defined in Code Section 4941;

(2)    shall distribute its income for each taxable year at such time and in such manner as not to subject the Corporation to the tax on undistributed income imposed by Code Section 4942;

3

GDI000004

(3)     shall not retain any excess business holdings as defined in Code Section 4943;

(4)     shall not make any investments in such a manner as to subject the Corporation to tax under Code Section 4944; and

(5)     shall not make any taxable expenditures as defined in Code Section 4945.

## ARTICLE X
## DISSOLUTION

In the event of the liquidation, dissolution, or winding up of the affairs of the Corporation, whether voluntary, involuntary, or by operation of law:

(1)     None of the property of the Corporation or any proceeds thereof may be distributed to or divided among any of the directors or officers of the Corporation or inure to the benefit of any individual; and

(2)     After all liabilities and obligations of the Corporation have been paid, satisfied, and discharged, or adequate provision made therefor, all remaining property and assets of the Corporation must be distributed to one or more nonprofit organizations exempt from federal income taxation under section 501(c)(3) of the Code as determined by the Board of Directors.

## ARTICLE XI
## AMENDMENTS TO GOVERNING DOCUMENTS

A.     Any amendment, alteration or repeal of this Certificate of Incorporation, or the adoption of any provision inconsistent herewith, shall require for its approval the vote of a majority of the Members; provided that no such approval of Members shall be required at any time that all of the Members constitute all of the members of the Board of Directors.

B.     The power to adopt, amend or repeal the Bylaws shall be in the Members; provided that the Board of Directors may adopt, amend or repeal the Bylaws at any time that all of the Members constitute all of the members of the Board of Directors.

The undersigned Incorporator does hereby affirm under penalties of perjury that this Certificate of Incorporation of Disinformation Index, Inc., is his act and deed and the facts stated in this Certificate are true, and, accordingly, he has executed this Certificate as of August 10, 2020.

NEIL C. WEARE
Incorporator

4

GDI000005

# __EXHIBIT 4__

Civil Investigative Demand Issued to Global Disinformation Index Issued by the US Federal Trade Commission



UNITED STATES OF AMERICA
**Federal Trade Commission**
WASHINGTON, D.C. 20580

July 18, 2025

**VIA EMAIL**

The Global Disinformation Index
c/o Josh Levy, Esq.
Levy Firestone Muse LLP
900 17th St NW #605
Washington, DC 20006
jal@levyfirestone.com

> Re:    **FTC File No. 251-0061**

Dear Mr. Levy:

Pursuant to FTC Rule 2.7(*l*), this letter modifies the May 20, 2025 Civil Investigative Demand ("CID") issued by the Commission to The Global Disinformation Index ("GDI") to provide the following clarification:

### *SUBJECT OF THE INVESTIGATION*

*To determine whether any natural persons, partnerships, corporations, associations, or other legal entities have engaged in or are engaging in unfair, anticompetitive, collusive, or exclusionary acts or practices -- including inviting, participating in, or facilitating boycotts or other collusion or coordination -- to withhold, degrade, increase the cost of, or otherwise diminish the quantity of advertising placed on news outlets, media platforms, or other publishers in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, or Section 5 of the FTC Act, 15 U.S.C. § 45, as amended, or any other statutes or rules enforced by the Commission, and to determine the appropriate action or remedy. See also the attached resolution.*

A copy of the as modified CID is attached hereto.

If you have any questions concerning the CID or this letter, please contact Justin Epner at (202) 326-2942 or jepner@ftc.gov.

> */s/ Geoffrey Green*
> Geoffrey Green
> Assistant Director
> Anticompetitive Practices I Division
> Bureau of Competition

Josh Levy, Esq.
Page 2

cc:
Justin Epner
Ted Zang
Attorneys, Bureau of Competition

Attachment

Attachment

Civil Investigative Demand to The Global Disinformation Index

## CIVIL INVESTIGATIVE DEMAND
## ISSUED TO THE GLOBAL DISINFORMATION INDEX
## FTC FILE NO. 251-0061

Unless modified by agreement with the staff of the Federal Trade Commission (the "Commission" or the "FTC"), each Specification of this Civil Investigative Demand ("CID") requires a complete search of The Global Disinformation Index (hereinafter, "GDI") as defined in the Definitions, which appear after the following Specifications. Pursuant to the Commission's Rules of Practice, 16 C.F.R. § 2.7(k), GDI representatives must confer with the Commission representative identified in the final instruction of this CID within fourteen days after receipt of this CID. If GDI believes that the required search or any other part of this CID can be narrowed in any way that is consistent with the Commission's need for information, you are encouraged to discuss such questions and possible modifications with the Commission representative. All modifications to this CID must be agreed to in writing pursuant to the Commission's Rules of Practice, 16 C.F.R. § 2.7(l).

## *SUBJECT OF THE INVESTIGATION*

*To determine whether any natural persons, partnerships, corporations, associations, or other legal entities have engaged in or are engaging in unfair, anticompetitive, collusive, or exclusionary acts or practices -- including inviting, participating in, or facilitating boycotts or other collusion or coordination -- to withhold, degrade, increase the cost of, or otherwise diminish the quantity of advertising placed on news outlets, media platforms, or other publishers in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, or Section 5 of the FTC Act, 15 U.S.C. § 45, as amended, or any other statutes or rules enforced by the Commission, and to determine the appropriate action or remedy. See also the attached resolution. (As modified by letter dated July 18, 2025.)*

## SPECIFICATIONS

1.  State where GDI is incorporated or registered and provide a copy of GDI's articles of incorporation.

2.  State whether GDI is organized as a for-profit or not-for-profit entity.

3.  State the location and full physical address of each of GDI's offices in the United States and abroad.

4.  Provide GDI's organizational charts from 2018 through the present or other documents sufficient to show all GDI personnel over the same time period with responsibility for the following: ratings of any media, or any other product, program, project, work, or special report relating to data, analysis, or journalism that helps companies or consumers identify reliable information or disinformation or distinguish between sources of information online; GDI's Dynamic Exclusion List ("DEL"); media buying audits; publisher vetting; media market reviews; GDI's open source intelligence hub; and policy and advocacy.

**Civil Investigative Demand to The Global Disinformation Index**

5.   Describe each product and service that GDI currently offers or has offered from 2018 through the present.

6.   Provide all documents relating to ratings of any media, or any other product, program, project, work, or special report relating to data, analysis, or journalism that helps companies or consumers identify reliable information or disinformation or distinguish between sources of information online.

7.   Provide all communications between GDI and any other party regarding any request for GDI to label any content as disinformation, false, misleading, or deceptive.

8.   Provide all documents relating to any complaints that GDI received related to its activities, programs, or policies, including but not limited to its decisions on whether to label any content as disinformation, false, misleading, or deceptive.

9.   Provide all communications between GDI and any advertiser, advertising agency, or any person acting as an agent of an advertiser, including but not limited to demand side platforms and supply side platforms, related to brand safety and/or any of the GDI products and services identified in Specification 5.

10.  Provide all documents relating to other entities that purport to track, categorize, evaluate, or rate news sources, outlets, websites, content, or other entities for "misinformation," "hate speech," "false" or "deceptive" content, or similar categories, including but not limited to communications between GDI, or any of GDI's clients, and any person connected to those entities, including but not limited to:

   a)   NewsGuard Technologies, Inc.;

   b)   The World Federation of Advertisers ("WFA");

   c)   The Global Alliance for Responsible Media ("GARM");

   d)   The Interactive Advertising Bureau ("IAB");

   e)   Ad Fontes Media, Inc.;

   f)   The Check My Ads Institute;

   g)   Integral Ad Science ("IAS");

   h)   DoubleVerify;

   i)   Barometer;

   j)   Media Matters for America;

   k)   The Center for Countering Digital Hate;

   l)   Nelez; or

**Civil Investigative Demand to The Global Disinformation Index**

    m) The Media Roundtable.

11. Submit one or more Data Sets sufficient to show for each news source, news outlet, news website, or other news content publisher rated, evaluated, assigned a label, or otherwise scored by GDI:

    a) The name of the entity;

    b) The address of any website(s) associated with the entity.

    c) Any unique identifier(s) used to identify the entity across GDI's databases or data sets; and

    d) Any categorization of entity, including but not limited to whether the entity is associated with news, satirical, or platform content.

12. For each entity identified in Specification 11, submit one or more Data Sets sufficient to show, from 2018 through the present:

    a) Any reliability, credibility, safety, unreliability, unreliable, disinformation, or other similar rating (or label, or categorization) assigned by GDI to that entity, including any scoring changes and when those changes occurred;

    b) The scoring of the component criteria used to calculate the ratings identified in response to sub-specification (a), including any scoring changes and when those changes occurred; and

13. Provide any list produced, licensed, sold, or otherwise provided by You to any third party that evaluates or categorizes any news source, news outlet, news website, or other news content publisher entities by credibility or any other categorical metric maintained by GDI.

14. Provide documents and data sufficient to show the methodology by which GDI evaluates or categorizes any news sources, news outlets, news websites, or other news content publisher entities, including but not limited to the process GDI uses to select the sample of articles on which to rate the entity or content.

15. Provide documents and data sufficient to show the methodology which GDI determines whether content qualifies as "misinformation," "misleading," "deceptive," a "hoax," "hate speech," or any other similar descriptor relevant to its rating, label, or categorization business.

16. Provide all documents reflecting allegations that GDI's reliability, credibility, safety, or other similar ratings are or may be politically biased.

17. Provide all documents reflecting allegations that GDI's reliability, credibility, safety, or other similar ratings (or the criteria upon which they are based) are or may be unreliable, subjective, unscientific, or otherwise methodologically unsound.

**Civil Investigative Demand to The Global Disinformation Index**

18.    Provide all documents relating to all analyses, evaluations, and assessments performed by or provided to GDI of the effect of any rating, label, or categorization maintained by GDI, on the profits, revenues, unique visitors, subscribers, or any other business metric of any news source, news outlet, news website, or other news content publisher rated, evaluated, assigned a label, or otherwise scored by GDI, and all data sets and code that would be necessary to replicate the analysis.

19.    Provide all documents relating to any benefits to advertisers, brands, or advertising agencies that result from using any product or service identified in Specification 5.

20.    Provide all documents relating to the purpose of any rating, label, or categorization maintained by GDI, including but not limited to promotional and advertising materials created or disseminated by GDI.

21.    Provide all documents relating to GDI's use of AI technology to provide any of its services.

22.    Provide all documents relating to GDI working with ad tech, technology, or developer companies to develop and advance GDI's programs, policies, and objectives, including but not limited to any agreements between GDI and these companies.

23.    Provide all analyses or studies GDI conducted, sponsored, or commissioned relating to advertising on social media or digital advertising platforms, and all data sets and code that would be necessary to replicate the analysis.

24.    Submit one or more Data Sets sufficient to show, for each customer of GDI:

    a)    The name of the customer;

    b)    Any unique identifier(s) used to identify the customer across GDI's databases or data sets; and

    c)    Any categorization of the customer type, including but not limited to whether the customer is educational, not-for-profit, governmental, and/or a business.

25.    Provide each financial statement, budget, profit and loss statement, cost center report, profitability report, and any other financial report regularly prepared by or for GDI on any periodic basis. For each such statement, budget, or report, state how often it is prepared, and identify the employees responsible for its preparation; provide all such statements and reports on both a quarterly basis and a yearly basis.

26.    Submit one or more Data Sets sufficient to show, for each year from 2018 through present:

    a)    In total and by each product or service offered by GDI:

        i)    Revenues;

**Civil Investigative Demand to The Global Disinformation Index**

    ii)   Revenue deductions or adjustments, including but not limited to discounts;

    iii)  Costs of goods sold;

    iv)  Operating expenses;

    v)   Gross margin, including specifying the formula for calculating gross margin;

    vi)  Net margin, including specifying the formula for calculating net margin;

    vii)  EBITDA;

    viii) EBITDA margin;

    ix)  Total number of licenses; and

    x)   Total number of customers, including by customer type.

b)  By customers for each customer of GDI identified in Specification 24, in total and by each product or service offered by GDI:

    i)   Gross payments received from the customer;

    ii)   Payment deductions or adjustments, including but not limited to discounts;

    iii)  Cost of goods sold; and

    iv)  Total number of licenses.

27.    For each Data Set provided in response to any Specification in this Civil Investigative Demand, provide a data dictionary that includes:

    a)  A list of field names and a definition for each field contained in the Data Set;

    b)  The meaning of each code that appears as a field value in the Data Set; and

    c)  The primary key in the Data Set or table that defines a unique observation.

28.    Identify and describe the steps GDI took to preserve documents related to this CID. Provide documents sufficient to show all GDI document retention policies in effect during any portion of the relevant period.

29.    Identify the person(s) responsible for preparing the responses to this CID and provide a copy of all instructions prepared by GDI relating to the steps taken to respond. Where oral instructions were given, identify the person who gave the instructions and describe the content of the instructions and the person(s) to whom the instructions were given. For each Specification, identify the individual(s) who assisted in the preparation of the response, with a listing of the persons (identified by name and title or job description) whose files were searched by each. For each Specification requiring a narrative response

**Civil Investigative Demand to The Global Disinformation Index**

or data, identify all individuals who provided any information considered or used in drafting the response.

**Civil Investigative Demand to The Global Disinformation Index**

## <u>DEFINITIONS</u>

For purposes of this CID, the following Definitions apply:

1.   "You," "Your," "The Global Disinformation Index," "GDI," and the "Company," mean The Global Disinformation Index, Disinformation Index, Ltd., and Disinformation Index Inc., together with their successors, predecessors, divisions, wholly- or partially-owned subsidiaries, committees, working groups, alliances, affiliates, and partnerships, whether domestic or foreign; and all the directors, officers, employees, consultants, agents, and representatives of the foregoing. Identify by name, address, and phone number, each agent or consultant.

1.   "Agreement" means any oral or written contract, arrangement, or understanding, whether formal or informal, between two or more Persons, together with all modifications or amendments thereto.

2.   "Communication" means any exchange, transfer, or dissemination of information, regardless of the means by which it is accomplished.

3.   "Document" and "documents" mean any information, on paper or in electronic format, including written, recorded, and graphic materials of every kind, in the possession, custody, or control of GDI. The term "documents" includes, without limitation: computer files; email messages; text messages; instant messages and chat logs; other Messaging Applications; group chats; voicemails and other audio files; calendar entries; schedulers; drafts of documents; metadata and other bibliographic or historical data describing or relating to documents created, revised, or distributed electronically; copies of documents that are not identical duplicates of the originals in that Person's files; notes of meetings or telephone calls; and copies of documents the originals of which are not in the possession, custody, or control of GDI.

    a)   The term "computer files" includes information stored in, or accessible through, computers or other information retrieval systems. Thus, GDI should produce documents that exist in machine-readable form, including documents stored in personal computers, portable computers, workstations, minicomputers, mainframes, servers, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether on or off GDI premises. If GDI believes that the required search of backup disks and tapes and archive disks and tapes can be narrowed in any way that is consistent with the Commission's need for documents and information, you are encouraged to discuss a possible modification to this Definition with the Commission representative identified on the last page of this Request. The Commission representative will consider modifying this Definition to:

        i)   exclude the search and production of files from backup disks and tapes and archive disks and tapes unless it appears that files are missing from those that exist in personal computers, portable computers, workstations, minicomputers, mainframes, and servers searched by GDI;

**Civil Investigative Demand to The Global Disinformation Index**

  ii) limit the portion of backup disks and tapes and archive disks and tapes that needs to be searched and produced to certain key individuals, certain time periods, or certain Specifications identified by the Commission representative; or

  iii) include other proposals consistent with Commission policy and the facts of the case.

4. "Each," "any," and "all" mean "each and every." The terms "and" and "or" have both conjunctive and disjunctive meanings as necessary to bring within the scope of this CID anything that might otherwise be outside its scope. The singular form of a noun or pronoun includes its plural form, and vice versa; and the present tense of any word includes the past tense, and vice versa.

5. "Identify" or "specify," when used in reference to a natural person, means to state the person's (1) full name; (2) present or last-known residence and telephone number and present or last-known business address and telephone number; and (3) present or last-known employer and job title. For any person identified, if any of the above information was different during the time period relevant to the CID, supply both the current information and such different information as applies to the time period relevant to the CID. Once a natural person has been identified properly, it shall be sufficient thereafter when identifying that same person to state the name only.

"Identify" or "specify," when used in reference to a corporation or other non-natural person, means (1) to state that entity's name; (2) to describe its nature (e.g., corporation, partnership, etc.); (3) to state the location of its principal place of business; and (4) to identify the natural person or persons employed by such entity whose actions on behalf of the entity are responsive to the CID. Once such an entity has been identified properly, it shall be sufficient thereafter when identifying that same entity to state the name only.

"Identify" or "specify," when used in reference to facts, acts, events, occurrences, meetings, or communications, means to describe, with particularity, the fact, act, event, occurrence, meeting, or communication in question, including but not limited to (1) identifying the participants and witnesses of the fact, act, event, occurrence, meeting, or communication; (2) stating the date or dates on which the fact, act, event, occurrence, meeting, or communication took place; (3) stating the location(s) at which the fact, act, event, occurrence, meeting, or communication took place; and (4) providing a description of the substance of the fact, act, event, occurrence, meeting, or communication.

6. "Include" and "including" mean "including but not limited to." The use of the term "include" in any request shall not be used to limit the generality or scope of any request. Nor shall the generality of any request be limited by the fact that another request touches on the same topic with a greater or lesser degree of specificity.

7. "Person" or "persons" includes GDI and means any natural person, corporate entity, sole proprietorship, partnership, association, governmental or non-governmental entity, or trust.

**Civil Investigative Demand to The Global Disinformation Index**

8.    "Relate," "related to," and "relating to" mean, in whole or in part, addressing, analyzing, concerning, constituting, containing, commenting on, discussing, describing, identifying, referring to, reflecting, reporting on, stating, or dealing with.

9.    The term "Messaging Application" refers to any electronic method that has ever been used by GDI and its employees to communicate with each other or entities outside GDI for any business purposes. "Messaging Application" includes platforms, whether for ephemeral or non-ephemeral messaging, for email, chats, instant messages, text messages, and other methods of group and individual communication (e.g., Microsoft Teams, Slack, GroupMe, WhatsApp, Signal, Skype). "Messaging Application" may overlap with "Collaborative Work Environment."

## INSTRUCTIONS

For the purposes of this CID, the following Instructions apply:

I 1.    All references to year refer to calendar year.  Unless otherwise specified, each of the Specifications calls for: (1) documents for each of the years from January 1, 2018 to the present; and (2) information for each of the years from January 1, 2018 to the present. Where information, rather than documents, is requested, provide it separately for each year; where yearly data is not yet available, provide data for the calendar year to date. If calendar year information is not available, supply GDI's fiscal year data indicating the 12-month period covered, and provide the GDI's best estimate of calendar year data.

I 2.    Do not produce any Sensitive Personally Identifiable Information ("Sensitive PII") or Sensitive Health Information ("SHI") prior to discussing the information with a Commission representative. If any document responsive to a particular Specification contains unresponsive Sensitive PII or SHI, redact the unresponsive Sensitive PII or SHI prior to producing the document. The term "Sensitive Personally Identifiable Information" means an individual's Social Security Number alone; or an individual's name, address, or phone number in combination with one or more of the following:

- Date of birth

- Driver's license number or other state identification number, or a foreign country equivalent

- Passport number

- Financial account number

- Credit or debit care number

The term "Sensitive Health Information" includes medical records and other individually identifiable health information, whether on paper, in electronic form, or communicated orally. Sensitive Health Information relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

**Civil Investigative Demand to The Global Disinformation Index**

I 3.    Except for privileged material, GDI will produce each responsive document in its entirety by including all attachments and all pages, regardless of whether they directly relate to the specified subject matter. GDI should submit any appendix, table, or other attachment by either attaching it to the responsive document or clearly marking it to indicate the responsive document to which it corresponds. Attachments must be produced along with the document to which they are attached, regardless of whether they have been produced separately. Except for privileged material, GDI will not redact, mask, cut, expunge, edit, or delete any responsive document or portion thereof in any manner.

I 4.    Compliance with this CID requires a search of all documents in the possession, custody, or control of GDI, including, without limitation, those documents held by any of GDI's officers, directors, employees, agents, representatives, or legal counsel, whether or not such documents are on the premises of GDI. If any person is unwilling to have his or her files searched, or is unwilling to produce responsive documents, GDI must provide the Commission with the following information as to each such person: his or her name, address, telephone number, and relationship to GDI.

I 5.    Form of Production: GDI shall submit documents as instructed below absent written consent from the Commission representative.

    a)    Documents stored in electronic or hard copy formats in the ordinary course of business shall be submitted in the following electronic format provided that such copies are true, correct, and complete copies of the original documents:

        i)    Submit Microsoft Excel, Access, and PowerPoint files in native format with extracted text and metadata.

        ii)    Submit emails in TIFF (Group IV) format with extracted text and the following metadata and information:

| Metadata/Document Information | Description |
| --- | --- |
| Spec No. | Subpoena/request paragraph number to which the document is responsive. |
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the email. |
| Bates End | Bates number of the last page of the email. |
| Beg Attach | First Bates number of attachment range. |
| End Attach | Ending Bates number of attachment range. |

**Civil Investigative Demand to The Global Disinformation Index**

| Metadata/Document Information | Description |
|---|---|
| Custodian | Name of the person from whom the email was obtained. |
| Email BCC | Names of person(s) blind copied on the email. |
| Email CC | Names of person(s) copied on the email. |
| Email Date Received | Date the email was received. [MM/DD/YYYY] |
| Email Date Sent | Date the email was sent. [MM/DD/YYYY] |
| Email From | Names of the person who authored the email. |
| Email Message ID | Microsoft Outlook Message ID or similar value in other message systems. |
| Email Subject | Subject line of the email. |
| Email Time Received | Time email was received. [HH:MM:SS AM/PM] |
| Email To | Recipients(s) of the email. |
| Email Time Sent | Time email was sent. [HH:MM:SS AM/PM] |
| Page count | Number of pages in record |
| File size | Size of document in KB |
| File Extension | File extension type (e.g., docx, xlsx) |
| Record Type | Indicates form of record: E-Doc, E-Doc Attachment, Email, Email Attachment, HardCopy, Calendar Appt, Text Message, Chat Message, etc. |
| Folder | File path/folder location of email. |
| Filename with extension | Name of the original native file with file extension. |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Redaction | Indicates Yes or No status regarding |

**Civil Investigative Demand to The Global Disinformation Index**

| Metadata/Document Information | Description |
|---|---|
|  | document redactions. |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC0003090.txt |

iii) Submit email attachments other than those described in subpart (a)(i) in TIFF (Group IV) format. For all email attachments, provide extracted text and the following metadata and information as applicable:

| Metadata/Document Information | Description |
|---|---|
| Spec No. | Subpoena/request paragraph number to which the document is responsive. |
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Last Bates number of the document. |
| Beg Attach | First Bates number of attachment range. |
| End Attach | Ending Bates number of attachment range. |
| Custodian | Name of person from whom the file was obtained. |
| Date Created | Date the file was created. [MM/DD/YYY] |
| Date Modified | Date the file was last changed and saved. [MM/DD/YYYY] |
| Page count | Number of pages in record |
| File size | Size of document in KB |
| File Extension | File extension type (e.g., docx, xlsx) |

**Civil Investigative Demand to The Global Disinformation Index**

| Metadata/Document Information | Description |
|---|---|
| Filename with extension | Name of the original native file with file extension. |
| Record Type | Indicates form of record: E-Doc, E-Doc Attachment, Email, Email Attachment, HardCopy, Calendar Appt, Text Message, Chat Message, etc. |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Author | Author field value extracted from the metadata of a native file. |
| Last Author | Last Saved By field value extracted from metadata of a native file. |
| Redaction | Indicates Yes or No status regarding document redactions. |
| Native Link | Relative file path to submitted native or near native files. Example: \NATIVES\001\FTC0003090.xls |
| Parent ID | Document ID or beginning Bates number of the parent email. |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC0003090.txt |
| Time Created | Time file was created. [HH:MM:SS AM/PM] |
| Time Modified | Time file was saved. [HH:MM:SS AM/PM] |

iv)  Submit all other electronic documents, other than those described in subpart (a)(i), in TIFF (Group IV) format accompanied by extracted text and the following metadata and information:

**Civil Investigative Demand to The Global Disinformation Index**

| Metadata/Document Information | Description |
|---|---|
| Spec No. | Subpoena/request paragraph number to which the document is responsive. |
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the document |
| Bates End | Last Bates number of the document. |
| Beg Attach | First Bates number of attachment range. |
| End Attach | Ending Bates number of attachment range. |
| Custodian | Name of the original custodian of the file. |
| Date Created | Date the file was created. [MM/DD/YYY] |
| Date Modified | Date the file was last changed and saved. [MM/DD/YYYY HH:MM:SS AM/PM] |
| Record Type | Indicates form of record: E-Doc, E-Doc Attachment, Email, Email Attachment, HardCopy, Calendar Appt, Text Message, Chat Message, etc. |
| Author | Author field value extracted from the metadata of a native file. |
| Last Author | Last Saved By field value extracted from metadata of a native file. |
| Redaction | Indicates Yes or No status regarding document redactions. |
| Page count | Number of pages in record |
| File size | Size of document in KB |
| File Extension | File extension type (e.g., docx, xlsx) |
| Filename with extension | Name of the original native file with file extension. |

**Civil Investigative Demand to The Global Disinformation Index**

| Metadata/Document Information | Description |
|---|---|
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Originating Path | File path of the file as it resided in its original environment. |
| Production Link | Relative path to submitted native or near native files. Example: \NATIVES\001\FTC0003090.xls |
| Native Link | Relative path to submitted native or near native files.<br><br>Example: \NATIVES\001\FTC0003090.xls |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC-0003090.txt |
| Time Created | Time file was created. [HH:MM:SS AM/PM] |
| Time Modified | Time file was saved. [HH:MM:SS AM/PM] |

v) Submit documents stored in hard copy in TIFF (Group IV) format accomplished by OCR with the following information:

| Metadata/Document Information | Description |
|---|---|
| Spec No. | Subpoena/request paragraph number to which the document is responsive. |
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Bates number of the last page of the document. |
| Record Type | Indicates form of record: E-Doc, E-Doc Attachment, Email, Email Attachment, HardCopy, Calendar Appt, Text Message, Chat Message, etc. |
| Page count | Number of pages in record. |

Civil Investigative Demand to The Global Disinformation Index

| Redaction | Indicates Yes or No status regarding document redactions. |
|---|---|
| Custodian | Name of person from whom the file was obtained. |

    vi)   Submit redacted documents in TIFF (Group IV) format accompanied by OCR with the metadata and information required by relevant document type in subparts (a)(i) through (a)(v) above. For example, if the redacted file was originally an attachment to an email, provide the metadata and information specified in subpart (a)(iii) above. Additionally, please provide a basis for each privilege claim as detailed in Instruction 9.

b)   Submit data compilations in electronic format, specifically Microsoft Excel spreadsheets or delimited text formats, with all underlying data un-redacted and all underlying formulas and algorithms intact. Submit data separately from document productions.

c)   Produce electronic file and ESI processed submissions as follows:

    i)   For productions over 20 gigabytes, use an External Hard Disc Drive (stand-alone portable or hard drive enclosure) or USB Flash Drive in Microsoft Windows-compatible, uncompressed data format.

    ii)   For productions under 20 gigabytes, submissions may be transmitted electronically via FTP. The FTC uses Kiteworks Secure File Transfer. To request a Kiteworks upload invitation, contact the FTC representative identified in the request you received. Use of other File Transfer methods is permitted. Please discuss this option with the FTC representative identified in the CID to determine the viability.

    iii)   CD-ROM (CD-R, CD-RW) optical disks and DVD-ROM (DVD+R, DVD+RW) optical disks for Windows-compatible personal computers, and USB 2.0 Flash Drives are acceptable storage formats.

    iv)   <u>All documents produced in electronic format shall be scanned for and free of viruses prior to submission. The Commission will return any infected media for replacement, which may affect the timing of GDI's compliance with this CID.</u>

    v)   Encryption of productions using NIST FIPS-Compliant cryptographic hardware or software modules, with passwords sent under separate cover, is strongly encouraged.

d)   Each production shall be submitted with a transmittal letter that includes the FTC matter number; production volume name; encryption method/software used; list of custodians and document identification number range for each; total number of

**Civil Investigative Demand to The Global Disinformation Index**

documents; and a list of load file fields in the order in which they are organized in the load file.

e) If GDI intends to utilize any de-duplication or email threading software or services when collecting or reviewing information that is stored in GDI's computer systems or electronic storage media, or if GDI's computer systems contain or utilize such software, GDI must contact the Commission representative to determine, with the assistance of the appropriate government technical officials, whether and in what manner GDI may use such software or services when producing materials in response to this CID.

I 6. Before using software or technology (including search terms, email threading, Technology Assisted Review, deduplication, or similar technologies) to identify or eliminate documents, data, or information potentially responsive to this CID, GDI must submit a written description of the method(s) used to conduct any part of its search. In addition, for any process that relies on search terms to identify or eliminate documents, GDI must submit: (a) a list of proposed terms; (b) a tally of all the terms that appear in the collection and the frequency of each term; (c) a list of stop words and operators for the platform being used; and (d) a glossary of industry and company terminology. For any process that relies on a form of Technology Assisted Review to identify or eliminate documents, GDI must include (a) confirmation that subject-matter experts will be reviewing the seed set and training rounds; (b) recall, precision, and confidence-level statistics (or an equivalent); and (c) a validation process that allows Commission representatives to review statistically-significant samples of documents categorized as non-responsive documents by the algorithm.

I 7. All documents responsive to this CID:

a) shall be produced in complete form (e.g., including all family members, including Modern Attachments), un-redacted unless privileged, and in the order in which they appear in GDI's files;

b) shall be marked on each page with corporate identification and consecutive document control numbers when produced in TIFF format (e.g., ABC-00000001);

c) if written in a language other than English, shall be translated into English, with the English translation attached to the foreign language document;

d) shall be produced in color where necessary to interpret the document (if the coloring of any document communicates any substantive information, or if black-and-white photocopying or conversion to TIFF format of any document (e.g., a chart or graph), makes any substantive information contained in the document unintelligible, GDI must submit the original document, a like-colored photocopy, or a JPEG-format TIFF);

e) shall be accompanied by an index that identifies: (i) the name of each person from whom responsive documents are submitted; and (ii) the corresponding consecutive document control number(s) used to identify that person's documents, and if

**Civil Investigative Demand to The Global Disinformation Index**

submitted in paper form, the box number containing such documents. If the index exists as a computer file(s), provide the index both as a printed hard copy and in machine-readable form (provided that the Commission representative determines prior to submission that the machine-readable form would be in a format that allows the agency to use the computer files). The Commission representative will provide a sample index upon request; and

f)    shall be accompanied by an affidavit of an officer of GDI stating that the copies are true, correct, and complete copies of the original documents.

I 8.    If any documents or parts of documents are withheld from production based on a claim of privilege, provide a statement of the claim of privilege and all facts relied upon in support thereof, in the form of a log that includes, in separate fields, a privilege identification number; beginning and ending document control numbers; parent document control numbers; attachments document control numbers; family range; number of pages; all authors; all addressees; all blind copy recipients; all other recipients; all custodians; date of the document; the title or subject line; an indication of whether it is redacted; the basis for the privilege claim (e.g., attorney-client privilege), including the underlying privilege claim if subject to a joint-defense or common-interest agreement; and a description of the document's subject matter. Attachments to a document should be identified as such and entered separately on the log. For each author, addressee, and recipient, state the Person's full name, title, and employer or firm, and denote all attorneys with an asterisk. The description of the subject matter shall describe the nature of each document in a manner that, though not revealing information itself privileged, provides sufficiently detailed information to enable Commission staff, the Commission, or a court to assess the applicability of the privilege claimed. For each document or part of a document withheld under a claim that it constitutes or contains attorney work product, also state whether GDI asserts that the document was prepared in anticipation of litigation or for trial and, if so, identify the anticipated litigation or trial upon which the assertion is based. Submit all non-privileged portions of any responsive document (including non-privileged or redactable attachments) for which a claim of privilege is asserted (except where the only non-privileged information has already been produced in response to this Instruction), noting where redactions in the document have been made. Documents authored by outside lawyers representing GDI that were not directly or indirectly furnished to GDI or any third party, such as internal law firm memoranda, may be omitted from the log. Provide the log in Microsoft Excel readable format.

I 9.    If GDI is unable to answer any question fully, supply such information and data as are available. Explain why the answer is incomplete, the efforts made by GDI to obtain the information and data, and the source from which the complete answer may be obtained. If books and records that provide accurate answers are not available, enter best estimates and describe how the estimates were derived, including the sources or bases of such estimates. Estimated data should be followed by the notation "est." If there is no reasonable way for GDI to make an estimate, provide an explanation.

I 10.    If documents responsive to a particular Specification no longer exist for reasons other than the ordinary course of business or the implementation of GDI's document retention

**Civil Investigative Demand to The Global Disinformation Index**

policy, but GDI has reason to believe have been in existence, state the circumstances under which they were lost or destroyed, describe the documents to the fullest extent possible, state the Specification(s) to which they are responsive, and identify the persons having knowledge of the content of such documents.

I 11.    Do not destroy or dispose of documents responsive to this CID, or any other documents relating to the subject matter of this CID. The destruction or disposal of such documents during the pendency of this investigation might constitute a felony in violation of 18 U.S.C. § 1505 and 18 U.S.C. § 1512.

I 12.    In order for GDI's response to this CID to be complete, the attached certification form must be executed by the GDI official supervising compliance with this CID, notarized, and submitted along with the responsive materials.

I 13.    Any questions you have relating to the scope or meaning of anything in this CID or suggestions for possible modifications thereto should be directed to Justin Epner at (202) 326-2942 or jepner@ftc.gov. The response to the CID shall be delivered per the instruction of Justin Epner  during the course of normal business (8:30 a.m. to 5:30 p.m., Monday through Friday). Justin Epner will provide specific mail delivery instructions should that method of transmittal be required.

## <u>CERTIFICATION OF COMPLIANCE</u>

### <u>Pursuant to 28 U.S.C. § 1746</u>

I, _____, certify the following with respect to the Federal Trade

Commission's ("FTC") Civil Investigative Demand directed to The Global Disinformation Index

(hereinafter, "GDI") (FTC File No. 251-0061) (the "CID"):

1. GDI has identified all documents, information, and/or tangible things ("responsive

   information") in GDI's possession, custody, or control responsive to the CID and either:

   a. provided such responsive information to the FTC; or

   b. for any responsive information not provided, given the FTC written objections

      setting forth the basis for withholding the responsive information.

2. I verify that the responses to the CID are complete and true and correct to my knowledge.


I certify under penalty of perjury that the foregoing is true and correct.


Date: _____

_____
Signature


_____
Printed Name


_____
Title